Good afternoon everybody. It's a matter of Calhoun v. Secretary of the Pennsylvania Board of Probation and Parole. Good afternoon. May it please the court, my name is Richard Albanese from the law firm of Karff, Karff & Cerruti. I represent the appellant plaintiff, Mr. David Calhoun. We are a court appointed pro bono counsel. I'd like to reserve four minutes for rebuttal, please. Let me ask you at the outset, how much time are we now really talking about where he was unable to get out of jail because of the detainer being lifted and yet he was unable to leave? So the precise amount of time is from the date that his state sentence expired on February 23rd, 2006 until he was convicted in federal court on April 20th, 2006. Why don't we measure for when the state detainer was lifted on April 4th? Right. So if the state detainer was lifted on April 4th, we're only talking about 17 days. I think it was April 21st, by the way, I thought he was convicted. We're talking about most 17 days, aren't we? Based on what was filed yesterday. So the state detainer that was in the record of the case that was cited yesterday? It's in the superior court's opinion, too. Yeah, in the superior court. Yes. So, yes, if you look at it from that date, then it's about 17 days. Would the length matter to your argument on the merits or does that go to damages? Or what is the difference? That would go precisely to damages and not to the argument on the merits. I would argue that it's constitutional violation for someone to be detained one day. Agreed, agreed. But your argument is that Kenya Mann was contacted, the ADA Mann was contacted by Bowright from the prison. Before April 4th. Well, I want to ask you about that. When did Bowright contact Mann? So it's sometime in March that Mr. Calhoun was informed. He doesn't have exact knowledge of when the contact was made between Bowright, but it's sometime between February 24th, 2006 and during March. Alright, so if we know that Mr. Calhoun was supposed to be incarcerated at least through April 4th, when the state detainer was lifted, how can Ms. Mann be liable for telling Bowright in March that he's supposed to be incarcerated? Well, in the record of this case, there was no evidence of a state detainer. I was never aware of any of the state detainers. Well, I'm looking at the Commonwealth Court opinion of 2007, November 9th, 2007, and it states in there that the board removed its detainer on April 4th, 2006, although Calhoun remained incarcerated. He was found guilty of the federal charges on April 21st, 2006. So that is, what, eight years ago? Yes. So, I mean, so at most, it looks like we're talking about 17 days, but the thing that makes April 4th of significance is the conversation with AUSA Mann appears to have been in March? Yes, that appears to be. Even if it had occurred after April 4th, there would be issues, but it's a slam dunk now for her that what she said was correct in March. Yeah, I would say yes. This has, that argument was not raised in either, in the court below. Were you able to confirm on any basis supported by the record, though, Calhoun? Yes, I believe so. Well, what does that do to, I was going to ask you why you're even pressing the issue of absolute immunity and not falling back on qualified immunity, but we don't even, you didn't get to that if there's no violation on 283, do we, or under Bivens? Yeah, I would agree with you that under Bivens, if the violation, if there was a state detainer, and if there was any evidence that Ms. Mann was aware of that state detainer, then yes, I believe that that would preclude any finding of there being a violation of Bivens. And what about Mr. Goldstein? What's your evidence against him? He's even more removed from the case, is he not? Agreed, yes. And with Mr. Goldstein, it's simply, as with Ms. Mann, that after Mr. Calhoun alerted them to the concerns he had with his sentence, after that point, no one was informed of his sentence, that it had expired. The judge was not informed, similar to the case of Audrey Malone. There was no, even though the prosecutor's office knew of this issue after Mr. Calhoun had reported it, nobody informed the judge presiding over the case of the delay, particularly when the trial date was pushed back from before, I mean in light of the fact that the trial date was originally supposed to happen before the state sentence expired, but then was changed until later. But even his own attorney seems to think that he's being held dissent to a state detainer. His lawyer thought the reason he was in custody was identical to the rationale that Ms. Mann and Mr. Goldstein thought. Yes, and Mr. Calhoun alleged that his attorney was mistaken on that fact, that the state detainer was not in place at the time that that letter was written. That's a different issue. The complaint alleges bad faith. It doesn't really have anything to back that up other than the allegation of bad faith. But if even a cursory examination of the record at the time would appear, it would appear that what is keeping him in custody is a state detainer, and his lawyer thought that. How is there any liability whatsoever? You have a hard time even getting to the negligence standard, let alone overcoming any kind of immunity issue, don't you? Well, what I would say about that is that we don't have any information. This is very early, pre-discovery. This is on the 12b-6. We don't have any information about how his attorney, how Mr. Cannon, arrived. What difference would it make? Because it could have came from a variety of ways. If he had taken the prosecutor's word on faith, if he simply asked what the nature of the detainer was and the prosecutor told him that it was a state detainer and he relayed that to his client, I don't think that's an unreasonable set of circumstances. I'm not saying that this court should assume that's what happened. I'm not saying that at all. The 12b-6 standard in the appeal, whose burden is it? And we're dealing with something as important as immunity, and the Supreme Court has said that's got to be resolved at the earliest possible stage of the proceedings. If one could argue from the interstices of the complaint that maybe Cannon, who has tried a lot of cases including back in the old days, a very, very thorough defense attorney. This is not a guy who reads a lot of pages in a term, a very thorough lawyer. But be that as it may, if one could argue that he got the information from Mann or one could conclude that a professional attorney is the only kind of attorney there is, but an attorney, a skilled attorney looking at the record, determined that your client was being held on the basis of a state detainer, how can you possibly get over the hurdle? And from my perspective, the complaint is very clear in its allegation that that statement was inaccurate. And there's no evidence in the record aside from that letter that states that there's a state detainer. Now, I think that that's evidence that could have been presented to the court. If it would have been presented to the court, that's very easy to file an early motion for summary judgment. But on the basis of the pleadings alone at the 12B6 stage, there's not record evidence. That's too many inferences to make in favor of the defendant that Mr. Cannon reviewed the record, that he reviewed it thoroughly, and that he made a reasonable determination. Those are inferences, and they're reasonable inferences to take. I thought of this just now, but would the Strickland set of presumptions that come into play under a Strickland ineffective assistance analysis under the Sixth Amendment, where we have to presume counsel is competent, diligent, and that he or she's actions were intended in the best interest of one's client, would those inferences creep in here to 12B6 level? You're talking about inferences and conclusions. Why wouldn't that whole body of Strickland law from a very different context, why wouldn't that go to allow what's to conclude or to require us to conclude that when defense counsel makes that kind of representation, it's made in good faith in the best interest of his client after an adequate, in terms of criminal representation, an adequate search of the record? Well, I think that Mr. Cannon could have, in good faith, one possible explanation is that Mr. Cannon could have, in good faith, asked the federal prosecutors what the nature of the detention was and what their understanding of it was, and if they had assured him that there was a state detainer in place, I don't think that it would be. So you're saying a skilled attorney, a skilled defense attorney, when asked by his client, why am I in here, the way he goes about answering that, I'm using the masculine pronoun here because of Bill Cannon, the way he goes about answering that is to call the prosecutor and say, hey, why is my client still in prison? Oh, okay, detainer, okay, rather than going to the record and digging through the record to try to independently determine that there's some piece of paper holding the client, that's what you're saying? I don't think it's a wise course of action, but I don't think that it would be a violation of the Sixth Amendment, but that's just my interpretation. I'm really not prepared to discuss the presumptions under the Sixth Amendment here today. It's not an issue that I foresaw. It just occurred to me. It may not be relevant. I don't know. Okay. I appreciate your candor. I wasn't trying to wing it until you got back from rebuttal. It wouldn't have gone well for you, I'm sure. I appreciate your candor. Thank you. Thank you. Are we ready? Good afternoon. May it please the Court, my name is Elizabeth Mattione, and I represent Kenya Mann and Joel Goldstein, two Assistant United States Attorneys who prosecuted David Calhoun in 2006. Is there anything you think he did? No. No. How can someone read between the lines? No. I have something to add. Why didn't you bring to our attention this issue about the detainer? Was that not an omission on your office's part? No, I'm just complaining that we had to mine the record ourselves instead of you spoon-feeding it to us, which usually happens. Was there some reason for that? It was in getting ready and preparing for this argument, kind of in digging down to figure out what really happened and could we find in the record or records of other proceedings things that we could bring to the Court's attention, and it is our apology that it wasn't brought to the Court's attention sooner. You tend to think when you go through the brief that you can't go through that process that you just described. I'm not saying you, whoever it was. I don't even know if you wrote the brief, but whoever was responsible for preparing it, I would assume that that's part of the preparation of meeting his argument. Perhaps, Your Honor, but I still believe on the brief, as is, on the issues of whether or not Judge Buckwalter correctly granted qualified immunity to the prosecutors here that the brief fully addressed those issues, but I do appreciate Your Honor's question about whether it would not have been more helpful to have it brought to the Court's attention sooner. But I think the brief in itself does stand to provide the Court with what it needs to affirm Judge Buckwalter's December 18, 2008. You're not pushing qualified immunity here. You're assuming that, as if we would assume, what it appears now we cannot assume, that the information that was given was incorrect by this man. You're not now making the argument, because your time is still running and you could, that we're looking at absolute immunity. That's not where you're going from. No, Your Honor. We believe that the Court need not look at absolute immunity in order to affirm Judge Buckwalter's decision that he properly granted qualified immunity to the prosecutors in this case. But what's the ground for decision? Is it because, even if one assumes that she should not have had the conversation with Bowright, it's of no moment because at the time she had that inappropriate conversation, there was no harm that could accrue to Mr. Calhoun because he was properly incarcerated on a state detainer? Is that the proper grounds for decision? I don't recall that's what Judge Buckwalter, that's not what he said. It's not, and what I would say to that is, what we've discussed and what was discussed with the Appellant's Counsel is a separate independent basis that this Court could affirm Judge Buckwalter's decision. What our brief relied upon was that on the qualified immunity analysis, as to both prongs, that Judge Buckwalter was correct. He was correct first in finding that there was no constitutional violation alleged based on the conclusory nature of the facts in the complaint. Ms. Mann was referenced twice. Mr. Goldstein was referenced once. And even if we were to take the allegation, which provides more detail about Ms. Mann, not with the time frame other than the March time frame, and not with the context of the April 4, 2005, 2006, excuse me, lifting of the detainer, even putting that aside, that a prosecutor in Ms. Mann's position taking an inquiry, one inquiry from a federal detention center employee about a status of a criminal defendant to that pretrial detainee at that point, excuse me, in a saying back, he's there under legal authority but not saying more, our argument is. That's not actionable. That's not actionable. That's not a constitutional violation. Is that because prosecutors don't have the power to keep people in jail? I mean, that's one of the strange things about this case. Yes. When I first read the file, I thought, well, it's judges who issue orders that result in people being incarcerated, and it's wardens who keep them there. So it's fun enough. Until legal authority doesn't work. Yes, this is a very different situation than, obviously, the two other precedential cases dealing with prosecutorial immunity, either in Aubrey Millen or Schneider v. Smith. Here, no. Well, I mean, I remember those cases well because I was on the panel. Yeah. I mean, what was very troubling in those cases, as I recall, is that it's hard to argue that there's anything advocative about not following a judge's order. When a judge says, look, I'm going to lock this person up as a material witness, but if this case gets continued or dismissed, I need to know about it, there's nothing advocative about following that order. Here, it's a little closer. I mean, if a prosecutor is meddling with whether someone should be incarcerated, I mean, that's not typically advocative. I don't know what you call that. It's bizarre. I've never heard of it happening before. In theory, I guess, couldn't Calhoun drum up a conspiracy argument that Bo Wright at the jail and a U.S.A. man could somehow conspire to keep Calhoun incarcerated when he should not be. At least theoretically, that's possible. I think if you stretch it very, very far, you could possibly get there. But in the vacuum, but it has to be without the additional layers of facts, and I understand we're at motion to dismiss, but facts that are of either public record or Mr. Cannon's letter, that I think you can't look at it in a vacuum, that even assuming Ms. Mann had some kind of conspiracy with Ms. Bo Wright, a few things. Number one, as I said, you can't look at that in a vacuum, that here we have a number of things that would go against that. Mr. Cannon's letter, as Judge McKee noted, able criminal defense attorney who was representing to his client, you're being held, you're being held not on federal charges, you're being held on a state detainer, and that state detainer is going to keep you incarcerated until the duration of the criminal proceedings. That's one thing out there. Another thing is that the point that Judge Buckwalter, I think, very correctly makes, is that if you look at the criminal court docket here, this wasn't a period of inactivity as we had in Schrader v. Smith. It wasn't the case had terminated as we had in Odd v. Malone. This is between the June 29, 2005 indictment and the trigger date that the appellants relied upon, February 23, 2006. There were no less than 15 entries on the criminal court docket. There was oversight. There were other independent entities involved here. So I think to answer your question, and I don't mean to be evasive about it, but I think could there be some set of facts that perhaps a prosecutor could have malicious intent and conspire? He's kind of arguing that. Well, he is, but I think given all that I've just described, even assuming that we're true here and against the backdrop of Ms. Mann doesn't have the ability to do anything in terms of, other than to maybe apply to the court, which actually may bring her back up into the prosecutorial immunity umbrella. But, again, we're not going there. We're not arguing that. Okay. Thank you. Thank you very much. Do you want to use the moments that you served? You don't have to do that. You're welcome to do that if you want to. No, I don't have any further argument, just if there's any more questions. I do want to thank you on behalf of the court for undertaking the case pro bono, and I don't know who in your firm is responsible for approving that and authorizing you to use your term that way, but please give them our thanks and appreciation for doing that. Thank you. Okay.